1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   AMEC ENVIRONMENT &
    INFRASTRUCTURE, INC.,                    Case No.  13-cv-04059-WHO

8              Plaintiff/Counter-Defendant,

9       v.                                   ORDER DENYING MOTION TO
                                             STRIKE AND GRANTING MOTION TO
10  SPECTRUM SERVICES GROUP, INC.,           DISMISS

11             Defendant/Counter-Plaintiff.  Re: Dkt. Nos. 23, 24

12          Currently before the Court are plaintiff/counter-defendant's motions to strike the jury

13  demand and to dismiss Counts two through eight of the Counterclaim.  The Court heard argument

14  on these motions on December 4, 2013.  Having considered the papers submitted, and the

15  arguments made, the Court hereby DENIES the motion to strike and GRANTS the motion to

16  dismiss with leave to amend.

17                              **BACKGROUND**

18          This case arises out of disputes between plaintiff /counter-defendant AMEC

19  Environmental and Infrastructure Inc. (AMEC) and defendant/counter-plaintiff Spectrum Services

20  Group, Inc. (Spectrum).  AMEC was awarded a contract with the National Park Service (NPS) to

21  perform structural repairs at the historic prison on Alcatraz Island (Project).   Complaint ¶ 6.

22  AMEC entered into a Master Agreement, No. DWB2011-091 (Subcontract), with SSG effective

23  November 28, 2011, for work on the Project.  *Id*. ¶ 10.[1]  AMEC also issued a Work Order to SSG,

24  C012200011, effective February 14, 2012.  *Id*. ¶ 11.  Both parties agree that soon after the NPS

25  contract was awarded, disputes arose between NPS, AMEC and SSG regarding the scope of the

26  _____

27  [1]   SSG refers to this document as the "Master Agreement" and the Work Order issued February
    14, 2013 under the Master Agreement as the "Subcontract."  Counterclaim ¶ 19.  The Court will
28  refer to the November 2011 Master Agreement as the Subcontract and the February 2012 Work
    Order as the Work Order.

United States District Court
Northern District of California

1    work, responsibility for errors in the bidding process, responsibility for preparing pre-construction

2    documents, performance of changed work orders, the pace of the work, and who was responsible

3    for delays.  As a result of delays and an alleged inability to perform the required work, AMEC

4    terminated SSG for default under the Subcontract.  Complaint ¶ 71.

5         In August 2013, SSG filed an application with JAMS to arbitrate the parties' disputes.  *Id.*

6    ¶ 76.  AMEC argues that under the Subcontract, non-binding arbitration can only be conducted if

7    both parties agree to it in writing, and AMEC has not.  *Id.* ¶ 74, 77.  AMEC has not submitted to

8    JAMS' jurisdiction and has not participated in the arbitration.  *Id.* ¶ 78.[2]

9         In its Complaint, filed August 30, 2013, AMEC alleges the following claims against SSG:

10   (1) breach of the Subcontract; (2) declaratory judgment that AMEC properly terminated the

11   Subcontract; (3) declaratory judgment that the Subcontract does not allow for binding arbitration

12   absent both parties' written consent; (4) declaratory judgment that SSG's claims against NPS must

13   be adjudicated under the Federal Contract Disputes Act; and (5) injunctive relief preventing SSG

14   from proceeding with the JAMS arbitration and from initiating any new arbitration.

15        On September 26, 2013, SSG filed its Answer and Counterclaim against AMEC.  In its

16   Counterclaim, SSG assets the following claims: (1) declaratory relief that AMEC breached its

17   express and implied obligations under the Work Order by (a) threatening and coercing SSG to

18   enter into a subcontract with a third-party, (b) asserting that AMEC had the right to assess

19   damages against SSG for delays caused by AMEC and/or NPS, (c) failing to negotiate in good

20   faith over two Requests for Proposals Nos. 4 and 5, (d) by directing SSG to perform change work

21   while also refusing to pay, unless and until the NPS paid AMEC for the work, and (e) by

22   wrongfully and without just cause terminating SSG; (2) breach of contract, based on actions which

23   frustrated SSG's ability to perform under the contract; (3) breach of the implied covenant of good

24   faith and fair dealing; (4) breach of contract: failure to pay invoices on time; (5) breach of the

25   implied warranty of the sufficiency of the plans and specifications; (6) non-disclosure of material

26

27   _____

     [2]   Pursuant to the parties' stipulation, the Court stayed the JAMS arbitration pending this Court's
28   ruling on Count 3 of AMEC's Complaint (declaratory judgment that arbitration cannot commence
     without the express written consent of AMEC) and Count 5 (injunctive relief).  Docket No. 17.

United States District Court
Northern District of California

1   fact; (7) implied contractual indemnity; and (8) quantum meruit.

2     Currently before the Court are AMEC's motion to strike SSG's jury demand on the ground

3   that it was waived in the parties Subcontract, and AMEC's motion to dismiss for lack of

4   jurisdiction Counts 2 through 8 of SSG's Counterclaim on the grounds that they are subject to the

5   federal Contract Dispute Act.  SSG opposes both motions.

6               **LEGAL STANDARD**

7     Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's

8   jurisdiction over the subject matter of the complaint.  Fed. R. Civ. Pro. 12(b)(1). The party

9   invoking the jurisdiction of the federal court bears the burden of establishing that the court has the

10  requisite subject matter jurisdiction to grant the relief requested.  *Kokkonen v. Guardian Life Ins.*

11  *Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted).

12    A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack

13  federal jurisdiction either "facially" or "factually."  *Thornhill Pub'g Co., Inc. v. Gen. Tel. & Elecs.*

14  *Corp.*, 594 F. 2d 730, 733 (9th Cir. 1979).  When the complaint is challenged for lack of subject

15  matter jurisdiction on its face, all material allegations in the complaint will be taken as true and

16  construed in the light most favorable to the plaintiff.  *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th

17  Cir. 1986).  In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no

18  presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed

19  material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

20  claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."

21  *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In resolving a

22  factual attack on jurisdiction, the district court may review evidence beyond the complaint without

23  converting the motion to dismiss into a motion for summary judgment." *Safe Air v. Meyer*, 373

24  F.3d 1035, 1039 (9th Cir. 2004).

25    Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any

26  redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. Civ. P. 12(f).  The

27  function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that

28  must arise from litigating immaterial and impertinent issues by dispensing of those issues before

United States District Court
Northern District of California

1   trial.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510

2   U.S. 517 (1994) (citation omitted).

3                                        **DISCUSSION**

4   **I.   MOTION TO STRIKE JURY DEMAND**

5            AMEC moves to strike the jury demand asserted in SSG's Answer and Counterclaim,

6   arguing that the right to a jury trial was waived in the parties Subcontract, entered into in

7   November 2011.  Motion to Strike at 1.  Under Article 10.1.2 of the Subcontract:

8            The procedures specified in this Article 10 shall be the sole and exclusive procedures for
         the resolution of the Disputes.  THE PARTIES HEREBY WAIVE TRIAL BY JURY
9        WITH RESPECT TO ANY ACTION OR PROCEEDING BROUGHT IN CONNECTION
         WITH THIS AGREEMENT.
10

11   Ex. 2 to Complaint. [3]

12           AMEC argues this provision unequivocally waived SSG's right to a jury trial for its

13   Counterclaim, and is enforceable under the "knowing and voluntary" standard applied under

14   federal law.[4]  SSG disagrees and argues that the jury waiver is unenforceable under California law.

15   Specifically, SSG contends that as the Subcontract is governed by California law[5] and as this is a

16   diversity action, the California rule that predispute contractual jury waivers are unenforceable

17   applies.  *See Grafton Partners L.P. v. Superior Court*, 36 Cal. 4th 944, 967 (2005) (finding that

18   "governing California constitutional and statutory provisions do not permit predispute jury

19   waivers").

20           In support of its position that federal law should apply to determine the waiver's

21   _____

22   [3]  In the Motion to Strike, AMEC references the Subcontract as attached as "Ex. 1."  *See* Motion to
     Strike at 1.  However, there is no Exhibit 1 to the Motion to Strike.  Instead, the Court reviews the
23   Subcontract found at Exhibit 2 to the Complaint (Docket No. 1-4).
     [4]  Under federal law, courts consider the following factors to determine whether a jury waiver is
24   knowing and voluntary:  1) the negotiability of contract terms and negotiations between the parties
     concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3)
25   the relative bargaining power of the parties; and 4) the business acumen of the party opposing the
     waiver.  *See, e.g., Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1058 (N.D. Cal.
26   2013).
     [5]  Subcontract Article 12.1 "Governing Law," provides that the "Agreement shall be governed by
27   the laws of the state which is so specified in the Prime Agreement.  In the event such governing
     law is not defined in the Prime Agreement, the terms of the Agreement shall be interpreted and
28   enforced by the laws of the State in which the Project site is located."  Complaint, Ex. 2 at 12.1.
     AMEC does not dispute that California law applies to the Subcontract.

United States District Court
Northern District of California

1    enforceability, AMEC relies initially on a Supreme Court and Ninth Circuit cases which hold that

2    "that the right to a jury trial in the federal courts is to be determined as a matter of federal law in

3    diversity as well as other actions."  *Simler v. Conner*, 372 U.S. 221, 222 (1963); *see also Granite*

4    *State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1026-27 (9th Cir. 1996) ("in a

5    diversity action, federal law governs whether a party is entitled to a jury trial and if so, on what

6    issues."); *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) ("In a diversity

7    action, the parties' entitlement to a jury trial is determined by federal law."); *DePinto v. Provident*

8    *Sec. Life Ins. Co.*, 323 F.2d 826, 834 (9th Cir. 1963) ("Although this is a diversity suit, the right to

9    a jury trial is to be determined as a matter of federal law.").

10          These cases, however, applied federal law to determine whether the state law causes of

11    action and defenses at issue were entitled to determination by a jury or by a court sitting in equity.

12    *See Simler*, 372 U.S. at 222 (holding that the "characterization of that state-created claim as legal

13    or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to

14    federal law."); *Granite State*, 76 F.3d at 1027 (determining that a "litigant is not entitled to have a

15    jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Adams*, 876

16    F.2d at 709 (determining whether action to enforce a settlement agreement was entitled to

17    determination by jury); *DePinto*, 323 F.2d at 836 (determining whether stockholder's derivative

18    action was entitled to determination by jury).  These cases *do not* directly address the question

19    presented in this case: what law should apply to determine the enforceability of a contractual jury

20    waiver provision, contained in a contract governed by California law.

21          The Ninth Circuit has not reached the issue and other circuits, which have not been faced

22    with underlying state laws barring the enforcement of predispute jury waivers, are split on the

23    question.  *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) ("Federal

24    courts apply federal law in determining whether a contractual jury trial waiver is enforceable.");

25    *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18 (1st Cir. 2002) (applying federal law

26    in a diversity jurisdiction suit to determine enforceability of a contractual jury waiver); *Telum, Inc.*

27    *v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (applying federal law to

28    determine enforceability of contractual jury waiver); *Leasing Serv. Corp. v. Crane*, 804 F.2d 828,

United States District Court
Northern District of California

5

833 (4th Cir. 1986) (same); *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985) (same); *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (same); *but see IFC Credit Corp.v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) (finding that Illinois law and not federal law determines the validity of the jury waiver, as the underlying agreement selects Illinois substantive law).

In California, District Courts have applied federal law to determine whether a contractual jury waiver was "knowing and voluntary," without addressing the California Supreme Court's decision in *Grafton* and without acknowledging the conflict between applying the parties' choice of California law to determine, for example, the scope of the waiver or to resolve the underlying claims, while enforcing a jury waiver that is illegal under California law. *See, e.g., GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, 2009 WL 3246747, *4, 6 (N.D. Cal. 2009) (applying federal "knowingly and voluntarily executed" test to determine enforceability of contractual jury waiver); *Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, 521 F. Supp. 2d 1031, 1044 (N.D. Cal. 2007) ("The right to a jury trial in federal court is governed by federal law and, under federal law, parties may contractually waive their right to a jury trial.")[6]

However, two Northern District cases with similar facts to this case – diversity actions where the agreement containing the jury wavier was governed by California law – have expressly addressed *Grafton*, held that California law applies to determine the enforceability of the jury waiver, and declined to enforce the waiver. *See Integrated Global Concepts, Inc. v. J2 Global, Inc.*, 2013 U.S. Dist. LEXIS 148383, *10, 2013 WL 5692352 (N.D. Cal. Oct. 15, 2013) (applying California law to the contractual jury waiver); *Fin. Tech. Partners L.P. v. FNX Ltd.*, 2009 U.S. Dist. LEXIS 18657 *4, 2009 WL 464762 (N.D. Cal. Feb. 24, 2009) (same).

---

[6] Cases from other California District Courts have likewise enforced contractual jury waivers without analyzing *Grafton. See U.S. ex rel. Collins Plumbing, Inc. v. Turner-Penick Joint Venture*, 2013 WL 5462278, *3 (S.D. Cal. Sept. 30, 2013) (applying federal "knowingly and voluntarily" standard to contractual jury waiver); *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, 10CV2503 AJB DHB, 2013 WL 878754 (S.D. Cal. Mar. 8, 2013) (noting that the court previously determined, relying on *Simler*, that the enforceability of the jury trial waiver was governed by federal law rather than state law, because the action was proceeding in a federal forum); *see also Okura & Co. (Am.), Inc. v. Careau Grp.*, 783 F. Supp. 482, 488 (C.D. Cal. 1991) (pre-*Grafton*, applying federal standard to determine enforceability of contractual jury waiver).

United States District Court
Northern District of California

United States District Court
Northern District of California

1          In *Financial Tech. Partners*, Judge White recognized that the one of the rationales

2    underlying *Simler* – that federal law should be applied to determine which state causes of action

3    are entitled to be determined by the jury in order to protect the federal policy favoring jury trials –

4    would be undermined if courts enforced predispute contractual jury waivers that are illegal under

5    California law.  *See Fin. Tech. Partners L.P.*, 2009 U.S. Dist. LEXIS 18657 at* 2.  Judge White

6    also recognized that "the California law at issue is premised on an interpretation of the California

7    Constitution, not the Seventh Amendment of the United States Constitution. Thus applying

8    California law here would not undermine the uniformity of enforcing the Seventh Amendment,"

9    which was another rationale underlying the Supreme Court's decision in *Simler*.  *See Fin. Tech.*

10   *Partners L.P. v. FNX Ltd.*, 2009 U.S. Dist. LEXIS 18657, at * 4.  In a very recent decision in

11   *Integrated Global Concepts, Inc.*, Judge Whyte expressly agreed with that analysis.  2013 U.S.

12   Dist. LEXIS 148383, at * 10.[7]  In reaching their conclusions, Judges White and Whyte were also

13   cognizant of the general principle that courts "must indulge every reasonable presumption against

14   the waiver of the jury trial." *United States v. Nordbrock*, 941 F.2d 947, 950 (9th Cir. 1991).  In

15   light of the lack of clarity in the law and lack of Ninth Circuit case law on point, the Courts

16   applied California law and declined to enforce the predispute jury waiver at issue.

17         This Court likewise agrees with the analysis of the Sixth Circuit and the decisions from

18   Judges White and Whyte.  In this diversity case, as the underlying contract being sued on is

19   governed by California law, California law applies to the predispute jury waiver and makes it

20   unenforceable.

21

22   [7]  The Court recognizes that there is a split in the Eleventh Circuit in the District Courts over
     whether federal law or Georgia's prohibition on predispute contractual jury waivers should be
23   applied in diversity cases where the underlying agreement is governed by Georgia law.  *See Odom*
     *v. Fred's Stores of Tenn., Inc.*, 2013 U.S. Dist. LEXIS 1842, 6, 2013 WL 83023 (M.D. Ga. Jan. 7,
24   2013)  ("This Court finds that Georgia law is more in line with the intent of the Supreme Court to
     uphold jury trials, and therefore, based on an application of Georgia law to the issue of jury
25   waiver" finds waiver unenforceable); *GE Commer. Fin. Bus. Prop. Corp. v. Heard*, 621 F. Supp.
     2d 1305, 1309-1310 (M.D. Ga. 2009) (holding that since applying "general federal law" restrict
26   right to jury trial, as protected by state law, Court would apply Georgia's prohibition on
     prelitigation jury waivers); *but see Georgia Power Co. v. Westinghouse Electric Co*, No. 1:12-cv-
27   00167 (S.D. Ga. Sept. 30, 2013) [attached as Exhibit 1 to AMEC Reply] (applying federal law to
     predispute jury waiver that would otherwise be unenforceable under Georgia law); *U.S. ex rel.*
28   *Duncan Pipeline, Inc. v. Walbridge Aldinger Co.*, CV411-092, 2013 WL 1338392 (S.D. Ga. Mar.
     29, 2013) (same).

United States District Court
Northern District of California

1    AMEC's motion to strike SSG's demand for a jury trial is therefore DENIED.

2    **II. MOTION TO DISMISS COUNTERCLAIMS TWO THROUGH EIGHT**

3    AMEC also moves to dismiss SSG's second through eighth counterclaims for lack of

4    jurisdiction.  Specifically, AMEC contends that the parties' Subcontract requires SSG to "make all

5    claims for which the Client [NPS] is or may be liable in the manner" provided in the Prime

6    Contract.  Motion to Dismiss at 2-3.  AMEC notes that the Prime Contract contains a "Changes

7    Clause" incorporating Federal Acquisition Regulations which requires "Disputes" as to any

8    adjustment in prices or work change orders to be adjudicated under the "Contract Disputes Act of

9    1978."  *Id*. at 3.[8]  AMEC argues that Counterclaims 2 through 8 are really claims against NPS

10   related to changed work orders and unilateral modifications imposed by NPS and conveyed to

11   SSG by AMEC.  As such, AMEC argues, those claims must be submitted through the CDA

12   process and this Court has no jurisdiction to hear them.

13   SSG opposes the motion to dismiss, arguing first that this Court has original or

14   supplemental jurisdiction over all of SSG's counterclaims.  SSG also contends that its claims are

15   asserted not against NPS, but against AMEC and, therefore, not covered by the CDA.

16   **A.  Jurisdiction**

17   SSG argues, first, that because this Court has original and/or supplemental jurisdiction

18   over its counterclaims, the motion to dismiss should be denied.  SSG Oppo. Br. at 3-5.  However,

19   the question is not whether the Court has original or subject matter jurisdiction over the

20   Counterclaims but whether the CDA applies to those claims.  If so, the Court is divested of

21   jurisdiction.  *See, e.g., Bethlehem Steel Corp. v. Avondale Shipyards, Inc*., 951 F.2d 92, 94 (5th

22   Cir. 1992) (district court had no jurisdiction over contract claim not first submitted through CDA

23   to contracting officer of agency who issued contract).  The question remains, however, whether

24   _____

25   [8]  AMEC claims that the Prime Contract between it and the NPS is attached as Exhibit 1 to the
     Motion and that Article I.52 of the Prime Contract contains the "Changes Clause" incorporating

26   the procedures of the Contract Disputes Act (CDA).  *See* Motion to Dismiss at 2-3.  However,
     there is no Article I.52 in the Prime Contract attached as Exhibit 1.  There is an Article 6

27   addressing "Pricing of Adjustments," but that language is different from the language cited by
     AMEC in its motion.  Nonetheless, because SSG does not dispute that its Subcontract incorporates

28   the Prime Contract, and the Prime Contract incorporates the Changes Clause and the CDA, the
     Court will assume the CDA procedures would apply to claims SSG has against the NPS.

SSG's Counterclaims are really against NPS or whether they are against AMEC such that the CDA would not apply to them.

**B. Whether SSG Counterclaims are Subject to CDA Because They Are Claims Against NPS**

Reviewing the counterclaims as alleged, the Court finds that as currently pled, there is significant overlap between the harms SSG alleges were caused by AMEC and the actions of NPS. For example, SSG admits in its Counterclaim that the Final Design and Project Specifications "were prepared by the engineer of record, WJE, for the NPS. The NPS provided the Final Design and Project Specifications to AMEC, and AMEC in turn provided them to SSG and Pullman." *Id.* ¶ 34. Yet, SSG asserts a claim against AMEC for breach of the implied warranty of sufficiency of the plans and specifications. Counterclaim ¶¶ 112-117. Similarly, SSG asserts claims for unpaid invoices (Counterclaim ¶¶ 105, 109), although both parties admit that it was the NPS who imposed unilateral price modifications for various portions of the work. *See, e.g.*, Counterclaim ¶¶ 63, 68.

At oral argument, SSG's counsel admitted that there was overlap between SSG's claims against AMEC and the actions of the NPS. As the CDA covers all claims for which NPS "is or may be liable," at least some portion of SSG's claims – as currently pled – are subject to the CDA procedures.[9]

Moreover, while SSG argued in its Opposition that it should not be forced to pursue claims

_____

[9] In its Opposition to the Motion to Dismiss, SSG argued that the CDA cannot cover its claims because of the "*Severin* doctrine." Oppo. Br. at 7-8. The Court finds that the *Severin* doctrine does not apply here because the doctrine only precludes a contractor pursuing a claim when the contractor has no potential liability for that claim. *Cf. In Re Lockheed Martin Corp.*, ASBCA No. 53798, 03-2 B.C.A. (CCH) ¶ 32279 (June 9, 2003) (doctrine "generally precludes a prime contractor from sponsoring a subcontractor claim against the Government if the prime contractor is not liable to the subcontractor for the costs or damages in question and thus has incurred no injury arising from the matter." As the Board explained, "[h]ence, in order for a prime contractor to sponsor a subcontractor claim against the Government, the prime must have some liability to the subcontractor and thus, too, stand aggrieved by the Government conduct in question." *Id.* Here, AMEC has liability to SSG, even though NPS may be ultimately the cause of some of all of AMEC's liability. Those are the sorts of claims that should be resolved through the CDA. *See, e.g., Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550, 554 (Fed. Cl. 2001) *aff'd*, 48 F. App'x 752 (Fed. Cir. 2002) (there are "two ways in which a subcontractor can recover indirectly from the Government. First, any subcontractor claims that are sponsored or certified by a prime contractor and are brought in the prime contractor's name are allowed. . . Second, a prime contractor can include its liability to a subcontractor in its damages against the Government.") (internal citation omitted).

9

1   through the CDA process because AMEC has not promised to pursue those claims and/or certify

2   SSG's claims pursuant to 41 U.S.C. § 605(a)(1), at oral argument counsel for AMEC agreed that if

3   SSG present claims to AMEC for resolution through the CDA, AMEC will (after conducting its

4   due diligence) certify and pursue them.

5         The Court, therefore, GRANTS AMEC's motion to dismiss Counterclaims two through

6   eight.  However, that dismissal is with LEAVE TO AMEND.  SSG may attempt to replead its

7   claims so that the *only* potential liability for the repled claims rests with AMEC and makes it clear

8   that the NPS's actions in no way contributed to AMEC's alleged liability to SSG.  **The Amended**

9   **Counterclaim shall be filed within thirty (30) days of the date of this Order.**

10         As discussed during the hearing, the parties may alternatively determine that, in light of the

11   overlap between some or all of SSG's claims against AMEC and the action of the NPS, the claims

12   AMEC and SSG are asserting against each other in this case should be stayed or dismissed

13   without prejudice pending the exhaustion of the CDA process by AMEC/SSG.  The parties are

14   encouraged to reach an agreement on how best to proceed in order to efficiently resolve the

15   parties' complex disputes and to preserve judicial resources.

16                          **CONCLUSION**

17         For the foregoing reasons, AMEC's motion to strike is DENIED and the motion to dismiss

18   is GRANTED with leave to amend.

19         **IT IS SO ORDERED**.

20   Dated: December 6, 2013

21

22                          WILLIAM H. ORRICK
                            United States District Judge
23

24

25

26

27

28